IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2014

ANTWAN YUMATA HUNTER v. STATE OF TENNESSEE

Appeal from the Criminal Court for Davidson County
No. 2010C2617     Monte Watkins, Judge

No. M2013-01142-CCA-R3-PC - Filed July 8, 2014

The petitioner, Antwan Yumata Hunter, pled guilty to one count of the sale of less than 0.5 grams of cocaine, a Class C felony.  On appeal, he argues that he received ineffective assistance of counsel that rendered his guilty plea involuntary.  Specifically, he contends that trial counsel were ineffective for failing to advise him of a mandatory fine that accompanied his guilty plea; for failing to file pretrial motions, including a motion to suppress; and for failing to fully investigate his case.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Richard C. Strong, Nashville, Tennessee, for the appellant, Antwan Yumata Hunter.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

FACTS AND PROCEDURAL HISTORY

The petitioner was initially charged with one count of selling less than 0.5 grams of

cocaine in a drug-free zone, a Class B felony; one count of evading arrest, a Class A misdemeanor; and one count of resisting arrest, a Class B misdemeanor. Pursuant to a plea agreement, the petitioner pled guilty to one count of the sale of less than 0.5 grams of cocaine in exchange for a six-year sentence as a Range I offender with a release eligibility date of 30 percent. As part of the guilty plea, the remaining charges were dropped, the petitioner was not permitted to petition for early release, and he was assessed a $2,000 fine.

The trial court engaged in a plea colloquy with the petitioner wherein the petitioner confirmed that he was not under the influence of drugs or alcohol and that he was not suffering from any mental illnesses. The petitioner agreed that he had been able to communicate with his attorney, that his attorney explained the initial charges and range of punishment to him, and that he was satisfied with trial counsel's representation. The petitioner acknowledged that he had a right to a jury trial and that he was waiving both the right to a jury trial and the right to a direct appeal by pleading guilty. The petitioner also agreed that he had not been promised anything in exchange for his guilty plea nor had he been forced or threatened to enter his plea. The petitioner confirmed that he had discussed his guilty plea petition with trial counsel and that he understood the contents of the plea petition. He acknowledged that he did not have any questions when discussing the petition and that he would have asked any questions if he had them. The petitioner confirmed that he signed the petition freely and voluntarily, and trial counsel agreed that the petitioner understood what he was doing by entering the guilty plea and that he did so freely and voluntarily.

The State then presented the following evidence that would have been used at trial:

> The testimony would be on June 17th, 2010, Metro detectives were working with a confidential informant who was equipped with an electronic listening device and photocopied buy money.
>
> Detective Grinstaff and this informant drove to Eleventh Avenue North here in Davidson County, made contact with [co-defendant.] [Co-defendant] approached the passenger side, asked him what they wanted. The informa[nt] advised, forty dollars worth of crack cocaine.
>
> [Co-defendant] walked to [the petitioner], motioned toward the vehicle with the informant and the detective. The informant got out of the car with the buy money, walked with [the petitioner] in between two houses. [Co-defendant] stayed with Detective Grinstaff at the vehicle.

2

> The informant and [the petitioner] had a brief transaction that was observed by Detective Grinstaff. The informant returned to the vehicle and handed Detective Grinstaff approximately one gram of yellow-rock substance, field-tested positive for cocaine base.

After hearing the State's recitation of the facts, the petitioner agreed that the facts were basically true. The petitioner then pled guilty to the charge of sale of less than 0.5 grams of cocaine. The trial court accepted the plea, finding that there was a factual basis to support the plea and that the plea was freely and voluntarily given. The court sentenced the petitioner to serve six years as a Range I offender and assessed the petitioner a $2,000 fine, which was classified as a "civil debt" on the judgment sheet. Counts 2 and 3 of the indictment were dismissed, and the court informed the petitioner that he would not be allowed any petitions for early release.

On April 12, 2012, the petitioner filed a pro se petition for post-conviction relief. The court appointed counsel, and the petitioner filed an amended petition. The post-conviction court then conducted a hearing based upon the amended petition.

At the post-conviction hearing, the petitioner testified that two different attorneys represented him through his criminal proceeding. The petitioner testified that he met with his first trial counsel "[p]robably four times," with some of the visits occurring at the jail and the rest at court. Trial counsel wrote several letters, including one where she requested that the petitioner sign a waiver stating that he was acting against trial counsel's legal advice if he did not agree to the plea agreement that the State offered. The petitioner testified that the only document he received pertaining to his case was a motion for discovery that trial counsel filed. He testified that he did discuss potential punishment ranges with trial counsel.

The petitioner requested that trial counsel withdraw from his case because the petitioner believed trial counsel was not acting in his best interest. He asked trial counsel to file a motion to suppress, which trial counsel did not file. The petitioner believed that illegal evidence was being presented to the grand jury and stated that when he informed trial counsel, she "refused to investigate [the petitioner's] case at any length." He claimed that the evidence was illegal because police stated that they received "one rock" from the petitioner, while a photograph and other parts of the petitioner's discovery "show[ed] two large rocks in their paperwork." He believed that the party responsible for producing the evidence "either forged the paper, or tampered with some evidence, or something." He further stated that the assistant district attorney informed trial counsel that he did not wish to discuss the petitioner's case and "that the deal was what it was."

3

The petitioner testified that he received a letter from trial counsel stating that, in her opinion, if the petitioner went to trial, he would be convicted and receive a twelve-year sentence to be served at 100 percent. He testified that the letter further stated that trial counsel would not file a motion to suppress.

Trial counsel agreed that she sent the petitioner a letter requesting that the petitioner sign a waiver indicating that he understood that he would be going against trial counsel's advice if he proceeded to trial. Trial counsel testified that she recalled visiting the petitioner in jail and communicating with the petitioner by letter and when he was in court. She stated that she was concerned that the petitioner "didn't understand the situation[.]" Accordingly, she had a "lengthy" visit with the petitioner where she brought the Criminal Justice Handbook and a copy of the petitioner's discovery material and "went through the statutes and everything at that particular time." Trial counsel testified that she did not file a motion to suppress because there was no basis to support the motion. The witnesses to the incident were police officers, and first trial counsel did not interview them because she had their statements in discovery. She withdrew as the petitioner's trial counsel after the petitioner became "irate" when trial counsel advised him that he should accept the State's offer to plead guilty. She believed the petitioner should plead guilty because the offer was "far better" than what the petitioner would receive if he was convicted; something first trial counsel expected would happen if the case went to trial.

The petitioner was appointed a second attorney, and he testified that the only discussions he had with her occurred at court. He stated that he met with his second attorney four times and said that he never received any correspondence from her.

The petitioner testified that on the day of his plea agreement, he discussed his case with his second attorney, and she informed him "that there was nothing that she could do about it." The petitioner stated that trial counsel asked him if he believed the police officer was being untruthful about anything. He responded, "Yes," and trial counsel stated that there was still nothing that she could do about it and that he had to take the plea. He testified that trial counsel's statement that she could not do anything for him was the reason that he pled guilty.

The petitioner filed several pro se motions, including motions for a speedy trial, institutional prosecution, a motion to suppress, and a motion for a conformity hearing. He filed the motion for a conformity hearing because he was assessed a $2,000 civil debt that he claimed the trial judge did not announce when he pled guilty. He testified that, to his knowledge, his second attorney never attempted to get these motions set or heard. He stated that he was compelled by both attorneys to enter a guilty plea. He admitted that neither attorney threatened him with bodily harm or any form of retaliation if he did not sign the

4

plea. When asked what he wished trial counsel would have done for him in terms of investigating his case, the petitioner responded that he "would like to have been heard before the Court[]" with regard to what he believed was illegal evidence being used against him.

The petitioner's second attorney testified that she met with the petitioner several times at court and discussed his case. She stated that she discussed possible ranges for a conviction with the petitioner and said that the State's plea offer was "much better" than he would receive if he proceeded to trial. Trial counsel believed the petitioner would not fare well at trial because the State's evidence "was not going to be easily dismissed." She testified that when she was appointed, the petitioner already had received everything in discovery. Trial counsel stated that she discussed the evidence with the petitioner and that "there was nothing to suppress[]" because police utilized a confidential informant and photocopied, controlled buy money in the drug deal. She recalled the petitioner's wanting things suppressed but could not recall if it was evidence or the petitioner's actual arrest that he wanted to be suppressed. The petitioner's second attorney testified:

> We talked about it, but it was -- I'm sorry. It was more, we talked about him wanting to suppress the evidence, but then we went through the facts of the case that when the buy was done and take-down signal was issued [the petitioner] fled into somebody else's house and [the police] went after him in hot pursuit. So, I don't know if -- I can't remember if it was talking about suppressing the arrest, because it was in a private residence. I think that that might have something to do with it, but we talked about that [the police] chased [the petitioner] because -- well, [the petitioner] had already been involved in a buy, but, also, because [the petitioner] ran. So, the resisting arrest and everything else that followed with that was not illegal.

Trial counsel recalled that the State had filed a notice seeking to classify the petitioner as a Range II offender, meaning that the State's plea offer was "a lot less than he was most likely going to face." She testified that it "was not a good case to go to trial" because the petitioner would not have "a large amount of potential to succeed" at trial. Trial counsel confirmed that there was no evidence to suppress because the petitioner was arrested based upon a hand-to-hand sale with an informant. She also agreed that there was nothing during the plea colloquy that indicated to her that the petitioner was not answering the questions appropriately and honestly.

The post-conviction court denied the petition, noting that both attorneys met with the petitioner on numerous occasions and advised him of the evidence against him and the likelihood of a conviction. The court observed that the petitioner signed the plea petition and

that the petition indicated both the range of punishment the petitioner would face if he went to trial and the punishment he received pursuant to the plea agreement. The court found that the petitioner's testimony was not credible and that the petitioner "failed to demonstrate by clear and convincing evidence ineffective assistance of counsel and that the plea was a violation of due process rights . . . . [and] failed to show that he was prejudice[d] by counsel's allegedly deficient conduct."

**ANALYSIS**

The petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he contends that his plea was involuntary because trial counsel were ineffective for failing to advise him of the mandatory $2,000 fine that would accompany his plea, failing to file pretrial motions, and failing to investigate the petitioner's case.

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). In evaluating whether a guilty plea was knowingly and voluntarily entered, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A reviewing court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Both the Sixth Amendment to the United States Constitution and article I, section 9

6

of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. In the context of a guilty plea, to satisfy the prejudice facet of *Strickland*, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Trial counsel's tactical decisions should receive deference only "if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Trial counsel "'has a duty to make reasonable investigations into the case or to make a reasonable decision that makes particular investigations unnecessary.'" *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). If trial counsel makes a decision not to investigate, the decision "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* A "[f]ailure to conduct a reasonable investigation constitutes deficient performance." *Id.* "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief of the ineffective assistance of counsel claim," and this court need not address both components if the petitioner fails to make a sufficient showing as to one component. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). This court may not substitute its own inferences for those drawn by the post-conviction court, as questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court.

*State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns*, 6 S.W.3d at 461. The trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## A. Mandatory Fine

The petitioner argues that trial counsel were ineffective for failing to advise him of a mandatory $2,000 fine that would accompany his guilty plea and that this deficiency rendered his guilty plea involuntary. He testified at the post-conviction hearing that he was not aware of any fine for which he would be responsible for until the day of his plea agreement. However, the petition to enter a plea of guilty indicated that trial counsel informed the petitioner that he faced a fine of up to $40,000 if convicted at trial for the sale of cocaine less than 0.5 grams in a school zone. Paragraph eleven of the plea petition stated that, "I understand that the Tennessee Constitution guarantees me the right to have any fine greater than fifty dollars ($50.00) set by a jury. I wish to give up that right and want the Court to set any fine which is part of my punishment." The petitioner signed this petition and admitted that he understood the contents of the petition and that he signed it freely and voluntarily after discussing the petition with trial counsel. Further, the post-conviction court specifically found that the testimony of the petitioner was not credible. Therefore, we conclude that the petitioner has not met his burden of proving that trial counsel's advice fell below "the range of competence demanded of attorneys in criminal cases" and that but for trial counsel's alleged errors, the petitioner would not have pled guilty and would instead have proceeded to trial. The petitioner is not entitled to any relief as to this claim.

## B. Pretrial Motions

The petitioner next claims that his attorneys were deficient for failing to file pretrial motions, including a motion to suppress. The petitioner argues in his brief that trial counsel's failure to file the motion to suppress made the guilty plea involuntary because it made him "believe that no assistance would be forthcoming from counsel in [the petitioner's] criminal case." At the post-conviction hearing, the petitioner testified that the evidence to be used against him was illegal because the police stated that they received "one rock" from the petitioner, but a photo the petitioner received as part of his discovery showed "two large rocks." However, in his brief, the petitioner concedes that the record on this issue is not well-made and that it was not made clear what evidence the petitioner sought to suppress. The petitioner further concedes that even if a motion to suppress the buy money found on the petitioner at the time of his arrest had been successful, the State could have still made its case based on the testimony surrounding the petitioner's arrest. His sole claim for relief is that

trial counsel's failure to file the motion led him to believe that his attorneys were not providing him with assistance and that this lack of assistance made him feel compelled to enter his guilty plea. He argues that trial counsel's "refusal to even attempt to advance [the petitioner's] theory of his defense made his plea involuntary."

At the post-conviction hearing, both attorneys testified that they did not see any basis to file a motion to suppress. The petitioner's first attorney testified that she was concerned that the petitioner did not "understand the situation," and she engaged in a lengthy visit with the petitioner where she took the Criminal Justice Handbook and a copy of the petitioner's discovery and discussed the relevant statutes and the evidence with the petitioner. The petitioner's second attorney stated that there was nothing to suppress because the transaction involved a confidential informant and controlled buy money that the police photocopied prior to the drug transaction. She further stated that because the petitioner had been involved in a controlled buy and subsequently evaded and resisted arrest, there was nothing illegal to suppress. The post-conviction court did not find the testimony of the petitioner credible, and the petitioner also concedes that it is not clear from the record exactly what he desired trial counsel to suppress. The petitioner bears the burden of proving that trial counsel's decision not to file a motion to suppress was deficient. When the petitioner does not show otherwise, trial counsel's decision is given deference. *See Cooper*, 847 S.W.2d at 528 (stating that deference to trial counsel's tactical choices applies when "the choices are informed ones based upon adequate preparation") (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)); *see also Titus Miller v. State*, No. W2012-01105-CCA-R3-PC, 2013 WL 1908705, at *9 (Tenn. Crim. App. May 7, 2013) (holding that trial counsel was not ineffective by failing to file a motion to suppress when trial counsel believed that, in his "professional opinion that the motion to suppress would not be successful if filed") . The petitioner has failed to meet his burden of proving by clear and convincing evidence that trial counsel was deficient.

Further, the petitioner has failed to prove any prejudice resulting from trial counsel's decision. In order to establish prejudice, the petitioner must show "a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). It is the burden of the petitioner to demonstrate a reasonable probability that the motion to suppress would have been successful. In order to succeed on his motion, the petitioner must have shown that his arrest was improper or that evidence was illegally obtained. Based upon the facts adduced at the guilty plea hearing, it is likely that the trial court would have found that the petitioner's arrest was proper and evidence legally seized because the petitioner was arrested immediately after an officer witnessed the petitioner take part in a controlled sale with a confidential informant. Accordingly, this issue is without merit, and no relief is warranted.

**C. Failure to Investigate**

9

The petitioner also argues that trial counsel were ineffective for failing to investigate his case fully. He concedes in his brief that he failed to indicate at the post-conviction hearing what evidence an investigation would have developed, but he argues that the refusal to investigate was an unreasonable refusal that amounted to ineffective assistance of counsel, which made his guilty plea involuntary. The petitioner's first attorney testified that she did not interview the police officers because she already had their statements in discovery and that she did not interview the confidential informant. The petitioner's second attorney also did not interview the police officers and testified that she did not believe that the identity of the confidential informant would be disclosed at the preliminary hearing. The petitioner has not alleged what fruits a further investigation may have yielded. "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1994). We conclude that the petitioner has not shown prejudice, and the petitioner is not entitled to any relief.

## CONCLUSION

For the above-mentioned reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE